IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RODNEY FLYNN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MARTIN O'MALLEY,[1] | : | NO.  22-3285 |
| Commissioner of Social Security | : | |

### MEMORANDUM AND ORDER

ELIZABETH T. HEY, U.S.M.J.                                      March 27, 2024

 Rodney Flynn ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) to review the Commissioner's final decision denying his application for disability insurance benefits ("DIB").  For the reasons that follow, I conclude that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence.

## I. PROCEDURAL HISTORY

 Plaintiff protectively filed an application for DIB on December 15, 2020, alleging disability beginning on September 26, 2014, as a result of cervical and thoracic spine injuries and seizure disorder.  Tr. at 53, 239.[2]  His application was denied at the initial level of review, id. at 78-82, and on reconsideration.  Id. at 87-93.  At his request, id. at

---

[1]Martin O'Malley became the Commissioner of Social Security on December 20, 2023.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner O'Malley should be substituted for Kilolo Kijakazi as the defendant in this action.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]To be entitled to DIB, Plaintiff must establish that he became disabled on or before his date last insured.  20 C.F.R. § 404.131(b).  The Certified Earning Record indicates and the ALJ found that Plaintiff was insured through June 2015.  Tr. at 227.

97-98, an administrative hearing was held before an ALJ on September 22, 2021, id. at

32-51.  On October 19, 2021, the ALJ issued an unfavorable decision, finding that

Plaintiff was not disabled.  Id. at 15-25.[3]  The Appeals Council denied Plaintiff's request

for review on June 22, 2022, id. at 1-3, making the ALJ's October 19, 2021 decision the

final decision of the Commissioner.  20 C.F.R. § 404.981.

Plaintiff commenced this action in federal court on August 17, 2022.  Doc. 1.  The

matter is now fully briefed and ripe for review.  Docs. 10-12.[4]

## II.   <u>LEGAL STANDARD</u>

The court's role on judicial review is to determine whether the Commissioner's

decision is supported by substantial evidence.  42 U.S.C. § 405(g); <u>Schaudeck v. Comm'r

of Soc. Sec.</u>, 181 F.3d 429, 431 (3d Cir. 1999).  Therefore, the issue in this case is

whether there is substantial evidence to support the Commissioner's conclusions that

Plaintiff is not disabled.  Substantial evidence is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion," and must be "more than a mere

scintilla." <u>Zirnsak v. Colvin</u>, 777 F.2d 607, 610 (3d Cir. 2014) (quoting <u>Rutherford v.

Barnhart</u>, 399 F.3d 546, 552 (3d Cir. 2005)); <u>see also</u> <u>Biestek v. Berryhill</u>, 587 U.S. __,

139 S. Ct. 1148, 1154 (2019) (substantial evidence "means only – 'such relevant

_____

[3]Plaintiff filed an application for Supplemental Security Income ("SSI") in August
2021, <u>tr.</u> at 45, 201-21, but there is no suggestion in the record or briefing that the
subsequent SSI application is relevant for present purposes.

[4]The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C.
§ 636(c).  <u>See</u> Standing Order – In Re: Direct Assignment of Social Security Appeals to
Magistrate Judges – Extension of Pilot Program (E.D. Pa. Nov. 27, 2020); Doc. 8.

evidence as a reasonable mind might accept as adequate to support a conclusion'")

(quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court has plenary

review of legal issues.  Schaudeck, 181 F.3d at 431.

To prove disability, a claimant must demonstrate an "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . which has lasted or can be expected to last for . . . not less than twelve

months."  42 U.S.C. § 423(d)(1).  The Commissioner employs a five-step process,

evaluating:

> 1.      Whether the claimant is currently engaged in
> substantially gainful activity ("SGA");
>
> 2.      If not, whether the claimant has a "severe impairment"
> that significantly limits his physical or mental ability to
> perform basic work activities;
>
> 3.      If so, whether based on the medical evidence, the
> impairment meets or equals the criteria of an impairment
> listed in the "listing of impairments" ["Listings"], 20 C.F.R.
> pt. 404, subpt. P, app. 1, which results in a presumption of
> disability;
>
> 4.      If the impairment does not meet or equal the criteria
> for a listed impairment, whether, despite the severe
> impairment, the claimant has the residual functional capacity
> ("RFC") to perform his past work; and
>
> 5.      If the claimant cannot perform his past work, then the
> final step is to determine whether there is other work in the
> national economy that the claimant can perform.

See Zirnsak, 777 F.3d at 610; see also 20 C.F.R. § 404.1520(a)(4).  Plaintiff bears the

burden of proof at steps one through four, while the burden shifts to the Commissioner at

the fifth step to establish that the claimant is capable of performing other jobs in the local

and national economies, in light of his age, education, work experience, and RFC.  See

Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

## III.   DISCUSSION

Plaintiff was born on June 29, 1966, making him 48 years of age at the time of his

alleged disability onset date (September 26, 2014) and 49 at the time of his date last

insured (June 30, 2015).  Tr. at 235.  He is 5 feet, 6 inches tall, and weighs approximately

170 pounds.  Id. at 239.  Plaintiff resided with his mother at the time of his administrative

hearing.  Id. at 34.[5]  He completed the twelfth grade, received no specialty training, id. at

35, 240, and he has past relevant work as a garbage collector/ trash recycler for temp

agencies.  Id. at 24, 240, 246-53.

### A.    ALJ's Findings and Plaintiff's Claim

The ALJ found at step one that Plaintiff did not engage in substantial gainful

activity during the closed period at issue, from his alleged onset date of September 26,

2014, through his date last insured of June 30, 2015.  Tr. at 17.  At step two, the ALJ

found that Plaintiff suffers from the severe impairments of cervical, thoracic, and lumbar

strain and sprain with myofasciitis; myofascial syndrome; and sacriolitis.  Id.  At step

three, the ALJ found that as of Plaintiff's date last insured, he did not have an impairment

or combination of impairments that met or medically equaled the severity of one of the

Listings.  Id. at 19.  In her RFC assessment, the ALJ determined that Plaintiff retained the

RFC to perform light work, except he could never climb ropes, ladders, or scaffolds;

---

[5]Plaintiff lived alone at the time of his Function Report, which is dated February
16, 2021, well outside the relevant closed period.  Tr. at 255, 262.

could frequently balance and perform other postural movements occasionally; and must avoid dangerous or moving machinery.   Id.  Based on the testimony of a vocational expert ("VE"), the ALJ found at step four that Plaintiff could not perform his past relevant work as a garbage collector, id. at 23, and at step five that he could perform other jobs that exist in significant numbers in the national economy, such as bench assembler, cleaner/housekeeper, and inspector hand packager.  Id. at 24-25.  As a result, the ALJ concluded that Plaintiff was not disabled.  Id. at 25.

Plaintiff argues that the ALJ improperly evaluated the opinion of a treating medical source, resulting in a flawed RFC determination premised on her own lay medical opinion.  Docs. 10 & 12.  Defendant responds that the ALJ's decision is supported by substantial evidence.  Doc. 11.

### B.    Medical Evidence Summary[6]

On June 3, 2014, approximately three months before Plaintiff's alleged onset date, he was diagnosed with a perirectal midline anal fissure.  Tr. at 1237, 1240.  A medical assessment performed that day revealed normal physical and mental findings, with further examination and/or treatment warranted for rectal bleeding.   Id. at 1237-40.

On September 26, 2014, Plaintiff's alleged onset date, he was violently assaulted at work, and he sought emergency room treatment the following day for eye pain with blurriness, and back and neck pain.  Tr. at 1259.  Upon examination, Plaintiff appeared

---

[6]Because Plaintiff's claim is limited to the ALJ's consideration of Plaintiff's physical impairments, the medical evidence summary will focus on that aspect of the record.

awake, alert, and in no acute distress, and he exhibited intact motor strength, no edema in the extremities, and no stridor in the neck. Id. at 1262.[7] A CT of Plaintiff's cervical spine showed straightening of the cervical lordosis, with no fracture, and mild to moderate multilevel degenerative changes with multilevel cervical spondylosis worst at C5-C6 where there was mild left and moderate right foraminal narrowing and mild central canal narrowing. Id. at 1263, 1281. The unenhanced soft tissues of Plaintiff's neck were within normal limits. Id. A CT of Plaintiff's head / brain showed no acute intracranial hemorrhage, mass effect, or midline shift. Id. at 1283.

Norman Stempler, D.O., treated Plaintiff for orthopedic concerns throughout the relevant period. Tr. at 365-79. During an initial evaluation performed on October 1, 2014, Plaintiff described the workplace assault, saying he was punched in the left side of his head and lost consciousness, followed the next day by pain in his entire body and a swollen and painful left orbital area, with double and blurry vision. Id. at 377-78. Plaintiff complained of headaches, neck pain, and pain in his mid and lower back, with no radicular systems but pain with all attempted activities including sitting, standing, driving, bending, lifting, turning, twisting, and changing positions, as well as sleep disturbances and difficulty with self-care and daily activities. Id. at 378. Upon examination, Dr. Stempler found that Plaintiff exhibited bilateral suboccipital, paracervical, and trapezial pain in the cervical spine, with tenderness and trapezial spasm

---

[7]A stridor is defined as a harsh, high-pitched breath sound often heard on inhalation with an acute laryngeal obstruction. Dorland's Illustrated Medical Dictionary, 32nd ed. 2012 ("DIMD"), at 1785.

limiting flexion, extension, side bending, and rotation within a 20-degree arc.  Id.  His biceps, triceps, and brachioradialis reflexes appeared symmetrical, with no motor or sensory changes; his thoracic and lumbar spine exhibited paravertebral tenderness, some flattening and spasm of the lumbar spine with bilateral sacroiliac tenderness, and deep buttock and sciatic notch tenderness; and he exhibited increased lumbosacral and sacroiliac pain with sciatic tension test in two positions.  Id.  Dr. Stempler diagnosed Plaintiff with cervical, thoracic, and lumbosacral pain and sprain with myofasciitis, myofascial syndrome, and sacroiliitis, with a possible cerebral concussion.  Id. at 379.[8] The doctor recommended that Plaintiff "avoid aggravating factors," without specification, and start physical therapy ("PT") to address spinal complaints and headaches, and the doctor also prescribed Ultram.  Id.[9]

On October 6, 2014, Plaintiff underwent an initial PT evaluation.  Tr. at 1222.  He primarily complained of neck and back pain, characterized as "constant" and as 7/10 in the lumbar region and 9/10 in the cervical region.  Id.  The evaluation documented

---

[8]Myofasciitis refers to inflammation of a muscle and its associated tissue, DIMD at 1223, and myofascial pain syndrome is a chronic pain condition in which pressure on certain points of muscle (trigger points) cause pain in the muscle and sometimes in other parts of the body.  See https://www.mayoclinic.org/diseases-conditions/myofascial-pain-syndrome/symptoms-causes (last visited Feb. 26, 2024).

A cerebral concussion refers to a brain injury, with or without loss of consciousness, arising from a violent jar or blow to the head.  DIMD at 400.  The diagnosis of a concussion is not confirmed in the record, and Plaintiff received no treatment for concussion.

[9]Ultram (generic tramadol) is used to treat moderate to severe pain.  See https://www.drugs.com/ultram.html (last visited Feb. 26, 2024).

strength of 4/5 throughout Plaintiff's cervical and lumbar spine, to be reevaluated in 4-6 weeks.  Id.

On October 8, 2014, Plaintiff underwent a limited lateral internal sphincterotomy for treatment of his perirectal fissure, followed by incisions and drainage of an associated abscess on October 21 and November 14, 2014.  Tr. at 348, 351, 354.  There was no further documented treatment for the perirectal condition through the date last insured.

On October 29, 2014, Plaintiff told Dr. Stempler that PT provided some relief of his persistent cervical, thoracic, and lumbar spine complaints, and that he would continue PT as soon as he had sufficiently recovered from his unrelated surgery to comfortably ambulate.  Tr. at 376.  Dr. Stempler noted that Plaintiff's physical examination was "essentially unchanged from his initial evaluation," and the doctor opined that Plaintiff "is disabled from his previous employment and certainly any physical labor."  Id.

On December 15, 2014, Dr. Stempler's colleague Steven M. Allon, M.D., changed Plaintiff's medication from Ultram to Percocet.  Tr. at 375, 1279.[10]  Plaintiff "refused therapeutic exercises" at two consecutive PT appointments in late December 2014, id. at 1213, and on January 5, 2015, the therapist noted that Plaintiff "still cannot do [therapeutic exercises]" due to his rectal surgery.  Id. at 1214.

On January 12, 2015, Dr. Stempler noted that Plaintiff continued to experience the effects of a concussion, with chronic cervical, thoracic and lumbar spine complaints and

_____

[10]Percocet contains a combination of acetaminophen and oxycodone (an opioid pain medication) used to relieve moderate to severe pain.  See https://www.drugs.com/percocet.html (last visited Feb. 26, 2024).

intermittent extension of pain into his upper and lower extremities.  Tr. at 373, 1199.

Upon examination, Plaintiff "still has trapezial pain, tenderness and spasm which limits

the extremes of motion," as well as paralumbar vertebral tenderness with limited motion,

spasm and sacroiliac tenderness, and sciatic tension tests in two positions increased his

lumbosacral and sacroiliac pain.  Id.  Plaintiff exhibited no sensory changes and no

abnormalities of the patellar and Achilles reflexes.  Id.  Dr. Stempler's impressions were

ongoing post-traumatic cephalgia,[11] ongoing cervical, thoracic and lumbosacral sprain

and strain with myofasciitis, and myofascial syndrome.  Id. at 374, 1200.

On February 23, 2015, Dr. Stempler wrote that Plaintiff "remains disabled from

his previous employment and any physical labor as mentioned, however, not disabled

from all gainful employment."  Tr. at 372, 1201.  The doctor explained that Plaintiff's

"combination of therapy and medications keeps him functional as long as he does not do

anything prolonged, strenuous, or repetitive in nature," and indicated that he "would be

happy to review a description of a sedentary light duty once we can wean [Plaintiff] off

oxycodone as we prefer he not return to work while on that medication."  Id.

On March 30, 2015, Plaintiff told Dr. Stempler that the combination of PT and

medication was making him more comfortable.  Tr. at 371, 1202.  Dr. Stempler noted that

Plaintiff had some non-radicular neck pain but that his focus was on his back, which

prevented him from doing anything prolonged or repetitive and that he could not bend,

lift, twist, turn or change positions without difficulty.  Id.  The doctor found no change in

---

[11]Cephalgia is defined as headache.  DIMD at 330.

Plaintiff's physical examination, with flattening of his lordosis and painful and limited range of motion.  Id.  Dr. Stempler opined that Plaintiff "remains disabled from his previous employment or any physical labor."  Id.

On April 11, 2015, an MRI of Plaintiff's lumbar spine showed a broad bulge at L3-L4 with no significant central or neuroforaminal stenosis; a broad bulge at L4-L5 with mild bilateral neuroforaminal stenosis and bilateral facet arthropathy; and a broad bulge with left paracentral/foraminal disc extrusion at L5-S1 which abuts the left S1 nerve root. Tr. at 606.  On May 6, 2015, Plaintiff returned to Dr. Stempler with persistent lumbar spinal complaints with left lower extremity radicular symptoms.  Id. at 1203.  Plaintiff continued to report relief with PT and Percocet, and Dr. Stempler referred him to pain management for epidural steroid injections, explaining that Percocet was not an option for "indefinite treatment."  Id

On April 27, 2015, Dr. Stempler prepared a medical source statement of Plaintiff's ability to do work-related activities (physical).  Tr. at 365-70.  The doctor opined that Plaintiff can lift/carry up to 20 pounds occasionally; sit for two hours at a time and for four hours in an eight-hour workday; and stand and walk for up to one hour each in an eight-hour workday.  Id. at 365-66.  He does not require a cane to ambulate.  Id. at 366. He can use either hand occasionally for all reaching; frequently push/pull with either hand; continuously use either hand to handle, finger, and feel; and is not limited in the use of foot controls.  Id. at 367.  He can never balance or climb ladders or scaffolds, and he can perform all other postural activities occasionally.  Id. at 368.  Finally, Dr. Stempler opined that Plaintiff could never tolerate exposure to unprotected heights and

10

occasionally tolerate exposure to all other environmental conditions, and that he could perform all identified activities, such as shopping, traveling independently and without assistance, maintaining a reasonable pace when walking or using stairs, taking public transportation, and caring for personal needs, despite his physical impairments.  Id. at 369-70.  Dr. Stempler did not complete the portions of the form asking for the medical or clinical findings supporting the assessments.

On March 9, 2021, State agency reviewer Lelwellyn Antone Raymundo, M.D., reviewed Plaintiff's medical records as part of the Initial Determination, identified the impairment of spine disorder, and opined that there was insufficient evidence to establish the severity of Plaintiff's impairment through his date last insured of June 30, 2015.  Tr. at 56-57, 58-59.  On June 2, 2021, at the Reconsideration level of review, State agency reviewer Wadicar Fabian Nugent, M.D., concurred with Dr. Raymundo's opinions.  Id. at 67-70

### C.   <u>Other Evidence</u>

At his administrative hearing, Plaintiff testified that he last worked as a trash recycler for a waste management company in 2016, and that he stopped working when he suffered neck and back injuries due to an assault while on the job.  Tr. at 36.  He went to the emergency room for assessment of his head, neck, and back, and was not admitted.  Id. at 39.  He never returned to work "[b]ecause of the nature of my injuries," id. at 39, specifically "herniated discs and things of that nature in my lower back" and "constant

headaches . . . from the head trauma." <u>Id.</u> at 40.[12]  Plaintiff received several courses of PT and testified that his treatment providers suggested surgery if he did not improve, but that he "explained to them how I was scared of surgery and things of that nature, so they constantly made me do rehab." <u>Id.</u> at 41.  He continues to experience two or three headaches per day lasting from 45 minutes to an hour, for which he takes Motrin.  <u>Id.</u> at 42, 47.  Plaintiff also testified that he experienced seizures "once to twice each month" in the aftermath of the assault, and that the most recent one occurred between six and nine months prior to the hearing, but that planned treatment with a neurologist was frustrated by the Covid-19 pandemic.  <u>Id.</u> at 43.[13]

When asked why he could not perform a job that did not involve lifting more than ten pounds, Plaintiff responded that he is unable to sit for long periods of time and has neck pain, <u>tr.</u> at 45, and that it hurts to bend to the left and right.  <u>Id.</u> at 48.  He could not take care of his personal needs after the assault due to problems bending, neck pain and headaches, requiring assistance from his mother and daughter for such activities as getting dressed, and he relied on them for transportation and shopping.  <u>Id.</u> at 46.  He has

---

[12]Plaintiff testified that he received workers' compensation and settled the case which arose from the assault.  <u>Tr.</u> at 40.

[13]The record reveals that Plaintiff received treatment in December 2020 for seizure disorder, <u>see</u> <u>tr.</u> at 588, but there is no evidence that Plaintiff received treatment for seizures during the relevant period.  Similarly, Plaintiff burned his right arm on cooking grease on July 13, 2015, after his date last insured, <u>see</u> <u>id.</u> at 616, 621, and although he has a history of substance abuse, the ALJ noted that there was no reported abuse during the relevant period, <u>id.</u> at 18, and no such concern is noted in Dr. Stempler's records. <u>See</u>, <u>e.g.</u>, <u>id.</u> at 371-79, 1195-203.

never had a driver's license.  Id. at 35.  He also cannot watch television or read due to problems staying in one position and/or holding reading material in the air.  Id. at 47.[14]

The ALJ also obtained testimony from a VE.  Tr. at 48-50.  The VE testified that Plaintiff's past relevant work as a garbage collector is unskilled and very heavy work. Id. at 48.  The ALJ asked the VE to consider a hypothetical individual of Plaintiff's age, education, and past work experience who could perform a range of light work with no climbing of ropes, ladders, or scaffolds, frequent balancing and all other postural movements occasionally, and who should avoid dangerous or moving machinery.  Id. The VE responded that such an individual could not perform Plaintiff's past relevant work, id., but could perform other unskilled and light jobs such as bench assembler, cleaner/housekeeper, and "inspector and hand packager."  Id. at 49.  When counsel asked the VE to consider the limitations assessed by Dr. Stempler – an individual limited to lifting ten pounds frequently and twenty pounds occasionally, sit for four hours of an eight-hour day, stand and walk one hour each in an eight-hour day, and who could occasionally reach in all directions bilaterally – the VE testified that the individual could not work at any exertional level.  Id. at 50.

## D.   Consideration of Plaintiff's Claim

Plaintiff argues that the ALJ improperly evaluated the opinion of Dr. Stempler, resulting in a flawed RFC determination premised on her own lay medical opinion.

---

[14]It is not entirely clear that Plaintiff was describing limitations that persisted beyond the period following the assault.  Nevertheless, and giving him the benefit of the doubt, his testimony is generally consistent with the symptoms and limitations set forth in his Function Report, tr. at 273-81.

Docs. 10 & 12.  Defendant responds that the ALJ's decision is supported by substantial evidence.  Doc. 11.

As previously noted, the ALJ found that Plaintiff had the severe impairments of cervical, thoracic, and lumbar strain and sprain with myofasciitis; myofascial syndrome; and sacriolitis.  Tr. at 17.  Also as previously noted, the ALJ found that during the closed period at issue Plaintiff retained the RFC to perform light work, except he could never climb ropes, ladders, or scaffolds; was limited to frequent balancing and other postural movements occasionally; and must avoid dangerous or moving machinery.  Id. at 19.  In making these findings, the ALJ presented a narrative summary of the medical record, summarized Plaintiff's testimony, and discussed the medical opinion evidence.  Id. at 19-23.

Consideration of evidence is governed by regulations, in effect since March 27, 2017, that focus on the persuasiveness of each medical opinion.  "We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."  20 C.F.R. § 404.1520c(a).  The regulations list the factors to be utilized in considering medical opinions:  supportability, consistency, treatment relationship including the length and purpose of the treatment and frequency of examinations, specialization, and other factors including familiarity with other evidence in the record or an understanding of the disability program.  Id. § 404.1520c(c).  The most important of these factors are supportability and consistency, and the regulations require the ALJ to

explain how he considered these factors, but do not require discussion of the others.  Id.
§ 404.1520c(b)(2).

It has long been held that "[t]he ALJ must consider all the evidence and give some
reason for discounting the evidence he rejects."  Plummer v. Apfel, 186 F.3d 422, 429
(3d Cir. 1999) (citing Stewart v. Sec'y HEW, 714 F.2d 287, 290 (3d Cir. 1983)).  When
there is a conflict in the evidence, the ALJ may choose which evidence to credit and
which evidence not to credit, so long as he does not "reject evidence for no reason or for
the wrong reason."  Rutherford, 399 F.3d at 554 (quoting Mason v. Shalala, 994 F.2d
1058, 1066 (3d Cir. 1993)); see also Plummer, 186 F.3d at 429 (same).

The RFC assessment is the most a claimant can do despite his limitations.  20
C.F.R. § 404.1545(a)(1).  In assessing a claimant's RFC, the ALJ must consider
limitations and restrictions imposed by all of an individual's impairments, including those
that are not severe.  Id. § 404.1545(a)(2).  However, the ALJ is not required to include
every impairment a clamant alleges.  Rutherford, 399 F.3d at 554.  Rather, the RFC
"must 'accurately portray' the claimant's impairments," meaning "those that are
medically established," which "in turn means . . . a claimant's *credibly established
limitations*."  Id. (emphasis in original) (quoting Podedworny v. Harris, 745 F.2d 210,
218 (3d Cir. 1984), and citing Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002));
Plummer, 186 F.3d at 431.  The ALJ must include all credibly established limitations in
the RFC and in the hypothetical posed to the VE.  Ramirez v. Barnhart, 372 F.3d 546,
550 (3d Cir. 2004) (citing Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987)).

The ALJ stated the following regarding the medical opinion evidence related to

Plaintiff's physical impairments:

> The medical source statement dated April 27, 2015 from [Dr Stempler] is not persuasive . . . because it is not well-supported by the evidence relied upon in explanation of the opinion, and it is not consistent with the updated evidence in the record from other sources.  Dr. Stempler did not provide any explanations for the limitations he found on his medical source statement form.  There are multiple areas on the form prompting the provider to "identify the particular medical or clinical findings (i.e. physical exam findings, x-ray findings, laboratory test results, history, and symptoms including pain etc.) which support your assessment or any limitations and why the findings support the assessment."  However, Dr. Stempler did not write any such medical or clinical findings or provide any explanations whatsoever in these areas of the form. . . .  Furthermore, Dr. Stempler's April 27, 2015 medical source statement is inconsistent with his February 23, 2015 narrative report in which he finds that [Plaintiff] is not precluded from all work.  Dr. Stempler found in his medical source statement in April 2015 that [Plaintiff] can only sit for four hours in an eight-hour workday, stand for one hour in an eight-hour workday, and walk for one hour in an eight-hour workday, which totals only six hours, less than a full eight-hour workday.  This is inconsistent with Dr. Stempler's findings on examinations in February and March 2015.  On February 23, 2015, Dr. Stempler wrote that [Plaintiff] "remains disabled from his previous employment and any physical labor as mentioned, however, not disabled from all gainful employment."  He noted that [Plaintiff's] "combination of therapy and medications keeps him functional as long as he does not do anything prolonged, strenuous, or repetitive in nature."  Furthermore, on February 23, 2015, Dr. Stempler noted that he "would be happy to review a description of a sedentary light duty once we can wean him off oxycodone as we prefer he not return to work while on that medication" and he planned to reevaluate [Plaintiff] in six weeks.  In follow-up on March 30, 2015, Dr. Stempler found that there was no change in [Plaintiff's] physical examination, still with flattening of his lordosis, and some painful and limited range of motion, and again only

noted that [Plaintiff] remained disabled from his previous employment "or any physical labor."  The issue of whether [Plaintiff] is disabled from his past work or any other work is an issue reserved to the Commissioner and is inherently neither valuable nor persuasive (20 CFR 404.1520b(c)).  However, the undersigned has considered that Dr. Stempler's medical source statement finding capacity for only a six-hour workday . . . is inconsistent with [the doctor's] contemporaneous narrative reports in February and March 2015, finding that [Plaintiff] is "not disabled from any gainful employment" but rather, just cannot do the level of physically strenuous work he had done in the past.  Dr. Stempler's medical source statement finding [Plaintiff] capable of less than full time work is inconsistent with the conservative treatment recommendations he made for [PT] and use of Ultram.  Considering other factors, Dr. Stempler is an orthopedic surgeon, has a treating relationship with [Plaintiff] and has examined him and provided treatment for his work-related injury to his spine.  Based primarily on the lack of support and the inconsistency of the April 2015 medical source statement from Dr. Stempler, the undersigned finds it not persuasive.

The State agency medical reviewers, [Drs. Raymundo and Nugent], found insufficient evidence to establish the severity of [Plaintiff's] alleged impairments through the date last insured of June 30, 2015.  The undersigned finds this not persuasive because it is not consistent with the updated medical evidence of record . . . which provides sufficient evidence to establish the severity of [Plaintiff's] alleged impairments through the date last insured.

Id. at 22-23 (citations to record omitted).  The ALJ concluded that her RFC assessment was supported by the record through the date last insured of June 30, 2015, noting that "the record documents that [Plaintiff] had good relief with conservative management of his back and neck pain, with [PT] and use of prescribed pain medication."  Id. at 23.

Plaintiff first argues that the ALJ engaged in an improper supportability analysis when she found the doctor's medical source statement to be "not persuasive" because the

doctor did not write any medical or clinical findings or provide any explanations for the opinions stated in the check-box form.  Doc. 10 at 4-5.  In doing so, Plaintiff relies on case law stating that check-box forms constitute weak evidence only when they are completed by a physician whose treatment notes do not appear in the record.  See, e.g., Hevner v. Comm'r of Soc. Sec., 675 F. App'x. 182, 184 (3d Cir. 2017) (check-box forms were weak evidence when doctor's treatment notes did not appear in record and forms were contradicted by other record evidence); Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) (check-box form was weak evidence when filled out by doctor who examined claimant once and other evidence contradicted doctor's opinion).  Thus, Plaintiff argues that rather than rejecting Dr. Stempler's medical source statement for failing to provide supporting explanations, the ALJ should have looked to Dr. Stempler's treatment notes for those explanations.  Doc. 10 at 5-8; Doc. 12 at 2-3.

Plaintiff is not entitled to remand on this basis.  First, the ALJ's narrative summary of the medical evidence includes Plaintiff's medical history and physical complaints reported to Dr. Stempler during the relevant closed period, as well as the doctor's examination findings and the findings from Plaintiff's diagnostic tests.  Tr. at 20-21. Therefore, it cannot fairly be said that the ALJ rejected Dr. Stempler's opinions without looking at the doctor's treatment records.  Second, it is entirely proper for an ALJ to reject medical opinions where, as here, the doctor ignores repeated prompts to identify the particular medical or clinical findings which support the assessed limitations, and where inconsistencies exist between information contained on a check-box form and other evidence of record.  See, e.g., Peters v. Berryhill, Civ. No. 18-1559, 2019 WL

2592623, at *5 (M.D. Pa. May 28, 2019) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.") (quoting Mason, 994 F.2d at 1065).

Here, inconsistencies exist between Dr. Stempler's medical source statement and his own treatment notes. Dr. Stempler stated in his February 23, 2015 treatment note that Plaintiff was precluded from performing his previous employment and any "physical labor," id. at 372, but he did so without any reference to what constituted "physical labor" or how those activities related to his functional ability. See also id. at 376 (same comment on Oct. 29, 2014). The VE characterized Plaintiff's prior work as a garbage collector as unskilled and very heavy, tr. at 48, 376, and the common understanding of "physical labor" connotes work with greater than light-level exertion. Moreover, in the same February 23, 2015 note, Dr. Stempler stated that Plaintiff is "not disabled from all gainful employment." Id. at 372. Despite unequivocally stating that Plaintiff was not disabled from all work, Dr. Stempler's own April 27, 2015 medical source statement indicates that Plaintiff could sit for two hours at a time and for four hours in an eight-hour workday, and stand and walk for up to one hour each in an eight-hour workday, for a total of only six hours per day. Id. at 366. Likewise, in his February 23, 2015 note, Dr. Stempler suggested that he would be willing to evaluate Plaintiff's ability to perform "sedentary light duty" once Plaintiff was weaned off oxycodone, id. at 372, 1201, which is inconsistent with his medical source statement limiting Plaintiff to working six hours a day, and it unhelpfully conflates "sedentary" and "light," which are different exertional levels. Thus, contrary to Plaintiff's argument, the ALJ did not substitute her own lay

19

opinion for Dr. Stempler's conclusions, but rather found the doctor's opinion to be "not persuasive" because it was inconsistent with the doctor's own narrative reports indicating that Plaintiff could perform gainful employment at something less than "physical labor." As the Third Circuit has noted, it falls to the ALJ to craft an RFC based on a survey of the medical evidence, and "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006).

Plaintiff also argues that the ALJ engaged in an improper consistency analysis by finding Dr. Stempler's opinion to be inconsistent with Plaintiff's conservative treatment recommendations, which consisted of PT and pain medication, arguing that the ALJ made a medical conclusion that is unsupported by any evidence in the record. Doc. 10 at 9-11. To the contrary, consideration of the type of treatment received is appropriate in the context of determining whether alleged impairments are disabling. See, e.g., Scouten v. Comm'r of Soc. Sec., 722 F. App'x 288, 291 (3d Cir. 2018) (ALJ properly relief on objective medical evidence of conservative treatment to discount severity of plaintiff's assertions). This is particularly true where, as here, the treating physician noted little change in Plaintiff's condition during the relevant closed period, and Plaintiff consistently reported relief with PT and pain medication. See Desai v. Kijakazi, Civ. No. 21-16250, 2022 WL 2235929, at *9 (D.N.J. June 22, 2022) (where medical record indicates relative stability in sensations, gait, strength, and muscle bulk in relevant period, "the ALJ's reliance on Plaintiff's conservative treatments in reaching her opinion was based on substantial evidence").

20

Similarly, Plaintiff argues that because the ALJ rejected Dr. Stempler's opinion and the state agency consultants at the initial and reconsideration levels of review found insufficient evidence to evaluate Plaintiff's claim, there were no other medical opinions in the record and therefore the ALJ must have resorted to her own lay medical opinion in assessing Plaintiff's RFC.  Doc. 10 at 10.  This argument puts the cart before the horse, as the burden to prove disability rests with Plaintiff.  42 U.S.C. § 423(d)(1); Poulos, 474 F.3d at 92.  An ALJ cannot find disability where there is no evidence to support it, particularly where the only opinion evidence supports a finding that Plaintiff could perform gainful employment.  Moreover, although Dr. Stempler diagnosed Plaintiff with back pain and pain syndromes, and although diagnostic testing revealed the presence of some mild to moderate spinal abnormalities, diagnoses alone are insufficient to establish disability.  See Dietrich v. Saul, 501 F. Supp.3d 283, 296 (M.D. Pa. 2020) ("The mere diagnosis of an impairment or presence of a disorder alone will not establish entitlement to benefits; rather, the claimant must show how the alleged impairment or disorder results in disabling limitations.") (citing Walker v. Barnhart, 172 F. App'x 423, 426 (3d Cir. 2006)).  Instead, Dr. Stempler's records show that he diagnosed Plaintiff with "sprain and strain" of the cervical, thoracic, and lumbar regions of the back, that Plaintiff's back and neck pain responded to conservative treatment, that Plaintiff did not need an assistive device to walk or balance, and that Plaintiff did not have abnormalities in his gait or ambulation, and the doctor opined that Plaintiff was not disabled from all gainful employment.  As such, the ALJ did not base her unfavorable disability determination on her lay medical opinion, but rather on the evidence of record.  See Jones v. Barnhart, 364

F.3d 501, 505 (3d Cir. 2004) (reading ALJ's decision "as a whole").  The ALJ's review of the medical evidence identifies ample support for the ALJ's determination that Dr. Stempler's opinion was inconsistent with the record as a whole, and that Plaintiff retained the RFC for a range of light work.

There is no question that Plaintiff has symptoms and limitations attributable to pain, and therefore the issue is whether the ALJ omitted or mischaracterized evidence or rejected opinion evidence for no reason or the wrong reason.  Rutherford, 399 F.3d at 554; Plummer, 186 F.3d at 429.  In light of the ALJ's detailed narrative summary of the medical evidence and her explanations regarding Plaintiff's impairments, course of treatment, and medical opinions, as quoted and discussed above, I do not find any such error.  I therefore decline Plaintiff's invitation to reevaluate the ALJ's consistency and supportability determinations regarding Dr. Stempler's opinion.

Finally, Plaintiff argues that the ALJ's errors in evaluating Dr. Stempler's opinion were not harmless, because had the ALJ evaluated the doctor's opinion differently, he would have found a more restrictive RFC precluding Plaintiff from being able to meet the demands of even sedentary work.  Doc. 10 at 11-12.  Because I find that the ALJ's consideration of Dr. Stempler's opinions comported with the regulations, I also reject this argument.

## V.   <u>CONCLUSION</u>

The ALJ properly evaluated the medical opinion evidence and properly assessed Plaintiff's RFC.  Therefore, I find that the ALJ's decision is supported by substantial evidence.  An appropriate Order follows.